Good afternoon, Your Honors. My name is Kevin Little, and I'm representing Mr. McCabe in this appeal. The first thing that I think is important to make clear in this appeal is that there is no such thing as a factless information in California. That's why the document has to be signed under penalty of perjury, even if it is permissible as an information and belief document. And in this case, the prosecutor, District Attorney Hart, stepped outside of his traditional prosecutorial role and committed a testimonial act by signing under penalty of perjury the charging document in this case. He did that knowing that, consistent with penal code section 806 and 813, that he was implying the existence of reasonable or probable cause for the charging. And he, again, signed this under information and belief. This is not a case where we are attacking the mere charging decision, but rather the fact that he made this statement, even though he knew that his underlying investigation had shown, in fact, that there was no probable cause, according to the lead investigator. And he also made this charge when he himself, the record viewed in the light most favorable to Mr. McCabe, believed at the time that he was filing this case not to pursue justice or do anything that was appropriate, but rather because he wanted to sure up some potential civil case. This is a case which, and I'll concede that the testimonial component here is probably thinner than it is in some of the cases that have been cited to the Court, but there is a testimonial component here. Yes. Counsel, I couldn't find any case that really said that simply signing an information is going to lead to you being held as a witness rather than a prosecutor. Do you have any? Yes, Your Honor. The Roberts v. Killeen case from the Tenth Circuit specifically held initially, the Tenth Circuit held that there was no stepping outside of the liability merely by signing a complaint under information and belief, and that went up to the Supreme Court, which summarily remanded that case in light of Killeen v. Fletcher, and there was a different result when it was reconsidered upon remand by the Tenth Circuit, at least as to that issue. Doesn't Mishler v. Clift suggest that by merely verifying a complaint on information and belief, it doesn't turn the prosecutor into the complaining witness? Yes, Your Honor. That case does hold that, but in a substantially different context. First of all, the person who signed the information in the Mishler case, which was a medical license-type prosecution arising from Nevada, was the clerk who was the only person who possibly could have signed the information under applicable law there. Furthermore, I would take some issue with Mishler v. Clift because the clerk of the board of the commissioners of examiners clearly is not a prosecutor. California and Nevada's systems are similar in that the attorney general is the one who prosecutes doctors and puts their license at risk, not the clerk of the board of the commissioners. What about Milstein v. Cooley? Isn't that in the same area? Your Honor, Milstein v. Cooley preceded Killeen, is my understanding. But all I'm suggesting, I'm trying to figure out. I, like my colleague there, looked all over to try to find the exact thing that we would have in front of us, and I couldn't find the case. Your Honor, I'll be kind. There is no exact thing. This case is probably, as I indicated, thinner in its testimonial content than others. But the reason why it's signed under information and belief under penalty of perjury and the reason why it merely does not say X violated Penal Code section 192a is because a factual component is required in an information under Penal Codes 806 and 813. That's why in California you can use an information without any additional documentation to turn around and get an arrest warrant. Right. But if there's no precise case, then why doesn't qualified immunity apply? Because the law isn't clearly established on the second prong of Saussure. The, what is not clearly established here is the procedural issue. The factual, the substantive issues to which qualified immunity would typically apply are very well settled. That you can't falsely cause someone to be arrested and are prosecuted by essentially committing perjury, which is what happened in this case. The fact of, and Colleen also establishes with respect to qualified immunity, it says that no matter how brief or succinct the testimonial component might be, that that is sufficient to take you outside of the traditional role of an advocate. And which is precisely what occurred here. Well, what you're really asking us to do is determine whether this particular act is not a decision to file the charges and initiate the prosecution. It's not an act to determine the evidence is sufficiently strong to justify the probable cause finding, because we've got a lot of cases which say absolute prosecutorial immunity comes from those particular actions. Absolutely. And if Deputy D.A. Hart had not falsely provided the thin testimonial instrument in this case, I think this would be on all fours with some of those cases. However, in this case, Chief Deputy D.A. Hart, and I think this case turns on the facts. He did not merely as a matter of, I'm sorry. Let me interrupt you. Did the signed complaint set forth any factual circumstance or any testimony? I read the factual complaint. Do you think that the factual complaint sets forth any factual circumstance or any testimony that would be rendered at the trial? It does set out the charge. It sets out- But does it set out any factual circumstance or testimony? The factual substance of the charging document is everything in it that goes beyond the language of the statute. It says that Mr. McCabe acted in unreasonable self-defense on a certain date in shooting and killing Mr. Contreras. None of that is statutory mandated language. That's a factual component. And indeed, that was the essence of what was attempted to be proved at the preliminary hearing. With respect to this case, as I was saying, I think this turns on the facts. Because this was not merely a prosecutor who signed the complaint as a matter of convenience or for any other seemingly legitimate reason. The evidence, again, looked at in the light most favorable to Mr. McCabe, shows that this prosecutor signed it because the investigator who had performed the underlying investigation would not have signed it. Because his finding and his determination was that there was no basis to initiate charges against this individual. But to get back to Judge Smith's question, I mean, I'm looking at the complaint and it just said, did commit a felony in violation of the statute. In that, did unlawfully and without malice kill Peter Contreras, a human being, in the honest but unreasonable belief that deadly force was required to be exercised in self-defense. And that's a legal allegation. It's a judgment, I guess. But I don't think it necessarily is a false statement of fact. Do you see the question? Yes, I do, Your Honor. I see it. The false statement. I mean, we're talking about something that's, in the classic sense of giving perjured testimony, you say this event, describing an event occurred, and in fact, it didn't occur. Here, it's a judgment on what happened as opposed to an allegation about what happened, the actual events. I understand the point completely, and the only, my response to that would be is that pleadings, information's included, have a factual component. That's why they can be offered as judicial admissions. That's why they can be binding in various contexts on the party that issued them. This was not merely, and I know it's intertwined with it, but this was not merely a recitation of the charging of the statute. There was a factual component here, and it was attested to on information of belief under penalty of perjury, and the fraud here, perhaps unlike Roberts and Kling and some other cases, was not explicit. It was rather implicit or even perhaps by omission, but it still, the representation was, is that there was a factual basis to issue this charge, and here I'm telling you that there is, and that simply wasn't true. And that's that. Well, counsel, it's hard to find this to be perjury. We know that the shot was fired from the side, and that there were several witnesses who said that the officer was not in danger. So these things may not stand up in trial, they may not even stand up through the preliminary hearing, but to call this perjury I find rather disturbing. Your Honor, again, I think this case turns on the circumstances, and we contend that this was a fraud by omission, because in this case the prosecutor stepped out of his bounds to push forward a charge for an illegitimate purpose, in other words, to sure up his notion that there was some civil case that had to be headed off, and he did that. Do we know, counsel, is that anywhere substantiated in the record? Yes, Your Honor. The police chief, Morell, who gave a deposition, which is part of the record, testified that she had a conversation with Deputy D.A. Hart herself, and that he specifically said that he didn't anticipate the charges to go ahead, and that this case was pursued because it was thought to be, I forget what exactly the language was, but that would help them civilly. That was the gist of his statement, and he also made a similar statement in the presence of a Lamore police commander named Joseph Laws, who also gave a deposition. It's interesting with respect to Commander Laws that he actually provided as an exhibit at his deposition a memorandum that he made for his own purposes right after being a party to that conversation with Deputy D.A. Hart. If we accept your argument in this case, aren't we really saying that in California any time a prosecutor signs a complaint that the prosecutor is stepping outside the bounds of absolute immunity? The holding of this court could be that broad, or it could be where the prosecutor commits and intends to commit a testimonial act and serve, quote, unquote, as the witness for purposes of the information, as opposed to merely signing it as a matter of course that he would step outside the bounds of immunity, which I think is the situation here. Do you want to save some time for rebuttal? Yes, Your Honor. Okay. Thank you. Good afternoon, Your Honors. May it please the Court, my name is James Arndt, and I'm representing the Chief Deputy District Attorney Patrick Hart. The first issue I'd like to discuss with the Court is the district court's finding that there was sufficient probable cause to charge Mr. McCabe with manslaughter in this case. And this is an important issue because this is dispositive of both the issues that are raised on appeal. This probable cause finding is fatal to all of McCabe's claims in this case. Both, there's four or five claims that all rely on either theories of malicious prosecution or false arrest. A lack of probable cause is an essential element of all of those causes of action. And it's important also to point out that the district court's finding of probable cause has not been raised as an issue on appeal in this case. So regardless of the finding of absolute immunity or whether the liberty of McCabe was sufficiently restricted, there is no evidence that he was prosecuted without probable cause, which is fatal to both of those causes of action. McCabe has argued that this finding of probable cause is specific to District Court. However, none of the authority cited by McCabe supports his position or that a finding of probable cause is somehow defendant-specific. In fact, the law is pretty clear that probable cause is evaluated under an objective standard, not subjective. If there's probable cause, there's probable cause. If it applies to one person, it applies to another. We also need to remember that this is a de novo review, and this Court can supported in the record whether or not it was relied upon by the lower court. In this case, however, it was relied upon by the lower court, and there was a specific finding that there was sufficient probable cause. Even if you get beyond this probable cause issue, then we need to address the prosecutorial immunity. And, again, an important point that Your Honor just made was if accepting McCabe's argument in this case with respect to signing the criminal complaint would result in any prosecutor ever filing any kind of criminal complaint or information and signing that document would take them out of the protections of the absolute immunity. The only thing that Chief Deputy District Attorney Hart did in this case was to sign the criminal complaint that began this criminal process in McCabe. All of the case law dating back to Imler v. Packman addresses, evaluates these cases on looking at the nature of the function performed, not the actor who's performing it. Hart's signing of that complaint is exactly . . . But I think the argument here, though, is that, and hypothetically, I don't want to get bogged down in the particular complaint, that if a prosecutor under penalty of perjury averts facts personally in a complaint, that that may be stepping outside the grounds of the protection of absolute immunity. Sure. And I think, again, the difference here is looking at that criminal complaint, which Your Honors have already looked at, and there are no factual environments in that complaint. No, but I think your broader point was, and the one I was raising is, doesn't it subject prosecutors to suits every time they sign a complaint? And you raised that issue. And I think that the difference hypothetically might be that if, because otherwise a penalty of perjury requirement would have no meaning, that the, supposedly, that the, if there are false facts there and the prosecutor knows they're false, that the prosecutor ought to be held liable for that. And I don't disagree with you. I think if a prosecutor is going to stick his neck out and try to attest to various factual matters, then they are taking themselves out of absolute immunity. The nature of the complaint may make a difference in the case. But the allegations here are this was just a trumped-up attempt to avoid civil liability. Well . . . In other words, that's the theory.  I know you disagree with it, but, I mean, that's their theory. Sure. And the testimony that was referred to, I think it was the chief of police and a commander, I believe that that testimony, they discussed this conversation with D.A. Hart after the evidence in the preliminary hearing was submitted awaiting a judge's ruling. And I think the context of the conversation was we realize now that this would be a very difficult case to prove, and we don't think we would even proceed if he's held answer at the preliminary hearing. I think that was the context of that conversation, not out of the blue that we're just doing to help you civilly by prosecuting you. No, I understand. But that's an issue of fact, if we got that far. Sure. I mean, that's, at this stage, we have to extrude the facts most favorably to the plaintiff. Sure. Sure. But, again, the criminal complaint, and I believe it's at ER 19, the signing a criminal complaint of that nature that sets out the legal standards for the charges is purely a prosecutorial function, and it's exactly what the prosecutorial immunity exists for, so that prosecutors can make difficult decisions like this. And trust me, this was a difficult decision to do this, but they can make those decisions without the fear of being sued for making a tough call like that. Unless your honors have any more questions on the prosecutorial immunity issue, I want to address the liberty restriction issue, the second part of the issue. I guess, first, I should also mention the applicability of qualified immunity, even if the absolute immunity does not apply. I think applying the Saucier versus Katz analysis, number one, I think the first question is whether there's a constitutional violation is no, because of the probable cause issue that we've already discussed. Number two, even if you get to the second step, a heart, Chief Deputy DA Hart did not do anything that a reasonable district attorney would not have done based on the information he had in the state of the law. The second focus of McCabe's issue is the liberty restriction issue. Again, even if we get there beyond that probable cause issue, the district court's finding was that the liberty restrictions were de minimis and not enough to trigger the Fourth Amendment protections. In this regard, I just don't see how McCabe gets around the court's finding in Karam versus the city of Burbank. The restrictions on McCabe were identical to the restrictions on the plaintiff in McCabe. They had to make court appearances and they had to get permission to leave the state. There's an argument that there's a distinction because McCabe was charged with a felony. However, none of the case law differentiates the liberty restriction in the context of felony versus misdemeanor. Well, but just a minute. Karam or Karam or whatever, however you say it, I listen to you say it, that's the first part of the judge's decision, was not charged with a felony. It seems to be that that was not charged with a felony is of some significance. I think it would be if the liberty restrictions were somehow different, but they were identical to the trespassing charges, I believe, that were at issue in the Karam or Karam case, however we want to pronounce that. That's the distinction versus felony versus misdemeanor is there were no differences in the liberty restrictions in this case, whether it was a felony as in this case. What would be the point of the Court mentioning or starting off with the fact that Karam was not charged with a felony? I mean, that's the lead sentence in the rationale. In, I'm sorry, Your Honor. In Karam, it starts off, as Judge Smith has indicated, it starts off, Karam was not tried, charged, charged with a felony. If it were unimportant, why would you lead with it? I can't answer that question. But I can, the only thing I can answer is that the, there were no differences in the liberty restrictions, whether it was a felony or a misdemeanor or an infraction. But when you look at Albright v. Oliver or Gerstein v. Pugh, don't you believe that those are some, give some significance to this felony idea? I don't think they do. I think Albright, and I know in the appellant's opening brief and their arguments they made in the District Court, they relied on Albright in terms of the liberty restriction and pretrial detention, things like that. That was in, I believe that was Justice Ginsburg's concurring opinion. It was. And I think the factual circumstances are so distinct from this case that I don't think you can take a concurring opinion from that case and apply it to this case, especially when the gist of Albright was deciding which constitutional violation to apply, whether it was a fourth or fifth. You know, Counsel, it seems to me that we're kind of missing the point. If one's being charged with a felony, more restrictions are allowed. When it's just a misdemeanor, probably less would be authorized or appropriate in terms of restriction. So I kind of read the case as favoring our situation. The guy's charged with a felony, and one would think that more restrictions would be appropriate. Exactly. Am I off on the wrong foot? I agree with Your Honor. And I think there could have been bail requested. There could have been a warrant issued for his arrest. He could have had to visit pretrial services, provide the court with financial information, et cetera, and none of that took place in this case. This was essentially treated like a traffic ticket. So are we really saying what you're arguing to us, are the burdens are more important in measuring this determination than the charge? Is that what you're saying? Absolutely. That's not exactly what Justice Ginsburg said in Albright. No. She said, quote, this view of the definition of duration of seizure comports with common sense and common understanding. A person facing serious criminal charges is hardly freed from the State's control upon his release from a police officer's physical grip. But I think that's a very general statement that's made. And normally I think that would be true in charges like this for an average citizen, maybe, or a murder charge or a serious charge. But in the factual circumstances of this case, there isn't anything resembling a police officer's grip or that type of restriction. No, I mean, the whole point is if you charge somebody with a felony, that there are necessary restrictions that come with that as opposed to misdemeanor, that the State can impose those restrictions. They can, but in this case they did not. And especially D.A. Calhoun and Chief Deputy D.A. Hart did nothing to try to make things more difficult for McCabe. They did not request that bail be posted. They did not request a warrant be issued. They did not request any restrictions whatsoever on Hart. And I think that's the factually that's the case. I suppose, but I think it's hard to dismiss this as saying it's the same as a traffic ticket. It was a serious charge. Let me take the traffic ticket out because that is a difference. That's just agreeing to appear in court. Let's apply it to the plaintiff in Parham. I think we've decided how to pronounce that. That's the similarity. And let's use a misdemeanor versus a traffic ticket. That's where the similarity is identical in these liberty restrictions. And that's the important part because that is on point with the facts of this case. Unless your honors have any more questions, I will submit it. Thank you. Thank you. Your honors, I respectfully submit what it boils down to is this. Either Chief Deputy DA Hart was the complaining witness in this situation under all of the facts that are outlined in the record in the light most favorable of Mr. McCabe or no one was. And clearly someone had to be the complaining witness or the information would have been subject to demur. The court seems to be concerned about opening the floodgates. This case has very peculiar facts. The prosecutor here obviously did not merely sign this as a prosecutor. He signed this complaint because there was no testifying witness. His intent to act as the testifying witness with respect to this could not be clearer. With respect to if a police officer had done the same thing, unless a chain of causation would have been cut off by a WAPI and some of the other cases that the courts have decided by a favorable finding at a preliminary hearing as such, this would subject an officer to liability. So why shouldn't it subject the prosecutor to the same steps and commits the same acts? With respect to the issue of probable cause, due to the tortured procedural history of this case, Deputy DA Hart had been out of the case for about four years. And district court found as to DA Calhoun, based on his involvement, based on his level of knowledge, that probable cause existed. That finding appears in the excerpts of record as specific as to DA Calhoun. There is a reason to believe that the finding would have been different had the issue of District Attorney Hart's knowledge and involvement in what probable cause would have been an issue. Specifically, the most glaring example is Deputy DA Hart said, objectively speaking, there are two versions of this, and I can't decide which one prevails. He said that. He said that to the press. He said that in connection with the initiation of this case. That clearly does not meet the definition of probable cause. That would be an admission against him that someone could use to establish the nonexistence of probable cause. That was not before the Court when it addressed the issue of probable cause as to DA Calhoun. Thank you, counsel. Thank you. The case is to argue to be submitted for decision. Thank you both for your arguments. And we'll proceed to the last case on this afternoon. So I'll argue the calendar, Palmer Platt v. Hartford. Thank you.
judges: Fletcher B. , Thomas, Smith R.